UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICHELLE RIVERA,

                     Plaintiff,

        -against-

SOVEREIGN BANK,

                     Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-1618 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are Plaintiff's objections to Magistrate Judge Vera M. Scanlon's Report and Recommendation ("R&R") that advised granting Defendant's motion for summary judgment. For the reasons set forth below, the R&R is ADOPTED in full.

## I. BACKGROUND

Plaintiff Richelle Rivera brought this action against Defendant Sovereign Bank for violations of civil rights under federal, state, and city law, arising out of her employment with Defendant. (Am. Compl. (Dkt. 7).) Defendant subsequently asserted its intent to seek dismissal or summary judgment on the grounds that Plaintiff had waived any claims against Defendant. (Apr. 8, 2011, Def. Ltr. (Dkt. 5).) The court directed discovery solely on the issues of the existence and validity of a release of liability between Plaintiff and Defendant, and the court further instructed that the intended summary judgment motion be referred to Magistrate Judge Andrew M. Carter for a report and recommendation. (Nov. 9, 2011, Minute Entry.) On December 9, 2011, the assignment of this case was transferred from Judge Carter to Magistrate Judge Steven M. Gold, and on August 17, 2012, the assignment was transferred from Judge Gold to Magistrate Judge Scanlon. Defendant's motion to dismiss for failure to state a claim or, in the

1

alternative, for summary judgment, was fully briefed as of October 25, 2012 (see Dkts. 12, 20, 21), and on December 3, 2012, Defendant withdrew its motion to dismiss, leaving its pending motion to be considered as a motion for summary judgment (Dec. 3, 2012, Minute Entry).

On August 30, 2013, Judge Scanlon issued an R&R, recommending that the court grant Defendant's motion for summary judgment and dismiss Plaintiff's action in its entirety. (R&R (Dkt. 25).) On September 20, 2013, Plaintiff filed written objections to the R&R (Pl. Obj. (Dkt. 27).) The full history of the case is discussed in detail in the R&R. (R&R at 1-6.)

## II.   STANDARD OF REVIEW

When a magistrate judge issues an R&R and that R&R has been served on the parties, a party has fourteen days to object to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, to obtain this de novo review of a magistrate judge's R&R, an objecting party "must point out the specific portions of the report and recommendation to which [he] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012).

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)"). Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

## III. DISCUSSION

Plaintiff purports to object to two aspects of the R&R:

> One, the Magistrate one-sidedly discounts every assertion by Plaintiff of her mental condition at the time of the signing of the release, despite Plaintiff's deposition testimony and Affidavit to the contrary and, two, the Magistrate assumes as fact that there was a bona fide reduction in force that was applicable to Plaintiff even though this is a contested issue that was not to be decided in this motion before the Court.[1]

(Pl. Obj. at 1.) Plaintiff's objections are contained in a letter brief consisting of ten substantive paragraphs, only three of which contain more than one sentence. (Id. at 1-3.) Plaintiff's objections raise no new issues or arguments, are highly generalized, and include just a single case citation. (Id.) To the extent Plaintiff's objections can charitably be construed as specific, they will be analyzed de novo; those objections that are wholly conclusory and general require clear error review.

### A. Consideration of Evidence Regarding Plaintiff's Mental Condition

Plaintiff claims the R&R "one-sidedly discounts every assertion by Plaintiff of her mental condition . . . despite Plaintiff's deposition testimony and Affidavit to the contrary." (Id. at 1.) Plaintiff is incorrect. The R&R extensively discusses all available evidence relating to Plaintiff's mental condition—and therefore relating to whether the release Plaintiff executed was validly signed. (R&R at 8-18.) As for Plaintiff's federal claims, the R&R properly analyzes the evidence relating to Plaintiff's mental capacity in connection with the Bormann factors. (Id. at 9-17 (citing Bormann v. AT & T Commc'ns, Inc., 875 F.2d 399, 403 (2d Cir. 1989).) The R&R

---

[1] Plaintiff also notes that the R&R "begrudgingly admit[s] that Plaintiff received a relatively small amount of money paid in the release, and this is a very strong argument in weighing the equitable factors of Bormann . . . ." (Pl. Obj. at 2) (citations omitted.) Plaintiff does not articulate if or how the R&R improperly weighed this fact in its Bormann analysis. In relation to the Bormann factor of whether Plaintiff had an attorney when she signed the severance agreement, the R&R acknowledged that the amount of severance offered Plaintiff *relative to* standard New York area legal rates could make consulting with an attorney "economically impractical" (R&R at 17 n.6), but it was an opportunity extended to Plaintiff nonetheless. As Bormann requires an analysis of the totality of the circumstances, any weight assigned this fact in Plaintiff's favor was rightly outweighed by the other Bormann factors, as concluded by the R&R.

3

correctly explains that a "party's capacity is presumed, and, to overcome this presumption, the party carries an 'extremely heavy' burden of demonstrating that she lacked capacity at the time of the disputed transaction." (Id. at 8 (citation omitted).) More specifically, in analyzing Plaintiff's mental condition, the R&R notes that "a plaintiff's own claim of a lack of mental capacity without the support of some *objective evidence* is not a sufficient basis upon which a court can find that a plaintiff has raised an issue of material fact to justify undoing an agreement." (Id. at 11 (emphasis added) (citing McKenna v. Ward, No. 88-CV-0513 (JFK), 1997 WL 66779, at *6 (S.D.N.Y. Feb. 18, 1997); Reid v. IBM Corp., No. 95-CV-1755 (MBM), 1997 WL 357969, at *7-8 (S.D.N.Y. Jun. 26, 1997)).)

The R&R discusses numerous reasons why Plaintiff's argument must fail. The R&R notes that although "Plaintiff states that she suffered from a mental illness and extrapolates that she could not have knowingly and voluntarily entered into the release," she "does not offer any medical evidence" supporting her argument as to incapacity at the time she signed the release. (R&R at 12.) Indeed, Plaintiff "never explains what about her illness impeded reasonable decision-making." (Id.) Plaintiff's testimony itself demonstrates that she made a rational decision to enter into the agreement. (See Pl. Dep. at 71-73, 75-80.) She signed the agreement because, in her own words, she "needed the money," which is a perfectly reasonable motivation and one that suggests she had sufficient decision-making abilities at the time. (Id. at 73, 78-79.) Additionally, Plaintiff testified that at the time she signed the release, she was ready and able to return to her position at the bank, which required focused cognitive abilities. (Id. at 43, 69, 84.) The fact that Plaintiff was capable of the high-level functioning required for her job strongly suggests that she was able to understand the release.

Plaintiff's claim that her treatment for mental health proves she was unable to validly sign the contract is also unavailing. See McIntosh v. Consol. Ed. Co. of N.Y., Inc., 216 F.3d

4

1072 (2d Cir. 2000) (affirming district court conclusion that plaintiff was not impaired by antidepressant medication); Cardona v. Cmty. Access, Inc., No. 11-CV-4129 (MKB), 2013 WL 304519, at *5 ("Plaintiffs' assertion that they suffer from anxiety is not enough to demonstrate that they suffered from a condition that was debilitating enough to prevent them from [validly entering into a contract].") (collecting cases). On the contrary, Plaintiff's treating physician, Dr. Ludmila Davidov, and treating social worker, Ms. Melissa Wannamaker, provided testimony that undercuts Plaintiff's claims that she lacked the requisite mental capacity at the time she signed the release. Although Dr. Davidov diagnosed Plaintiff with post-traumatic stress disorder and mild post-partum depression, she believed that Plaintiff was well-oriented to reality as of early May 2009 and did not think that Plaintiff's judgment was impaired in late June 2009. (Davidov Dep. (Dkt. 12-4) at 59-61, 64-66.) Likewise, Ms. Wannamaker diagnosed Plaintiff with adjustment disorder and pronounced anxiety, but also found that Plaintiff's grasp on reality was never impaired. (Wannamaker Dep. (Dkt. 12-7) at 17-17.) Plaintiff fails to counter this testimony with objective evidence that her disorders or treatment were so debilitating as to inhibit her capacity to enter a contract.

The same evidence fairly supports the R&R's analysis of the release of Plaintiff's claims under New York State and City law. As with federal law, New York law finds that existence of a person's mental illness in general is not sufficient to prove that person was incapable of forming a contract. See Scarfone v. Vill. of Ossining, 806 N.Y.S.2d 604, 605 (2d Dep't 2005); Matter of Verdugo v. Peachtree Funding Northeast, 500137/09, NYLJ 1202608540669 (N.Y. Sup. Ct., May 29, 2013; published June 28, 2013); Reid v. IBM Corp., No. 95-CV-1755, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997). Rather there must be credible evidence that the illness "interfered with a person's ability to understand the contract or act in his or her best interest." (R&R at 20 (citing Blatt v. Manhattan Med. Grp., P.C., 519 N.Y.S.2d 973, 975 (1st

Dep't 1987).) To assess the effects of alleged mental illness, New York courts look to objective evidence. Because Plaintiff has put forward no objective evidence demonstrating that her condition hindered her ability to comprehend and rationally sign the severance agreement, she has failed to make the required showing.

In sum, Plaintiff's general and conclusory objection that the R&R discounted Plaintiff's assertions is wholly without merit. Rather, the R&R thoroughly analyzed Plaintiff's arguments and found they failed to meet the required standard for abrogating the waiver on the basis of mental incapacity. The R&R's analysis is correct as to the law and the facts, and Plaintiff's objection is overruled.

### B. Consideration of Reduction in Force

Plaintiff's second specific objection is that the R&R "assumes as fact that there was a bona fide reduction in force ["RIF"] that was applicable to Plaintiff even though this is a contested issue that was not to be decided in this motion before the Court." (Pl. Obj. at 1.) This assertion is both false and irrelevant to the outcome of the decision on summary judgment.

First, the R&R assumed no such thing. The R&R initially refers to Defendant's description of the RIF as a "claim" (R&R at 1) and subsequently describes the evidence relating to the RIF in more detail, discussing the evidence adduced by Defendant and noting that "Plaintiff denies that Defendant had a reduction in force, but she offers no evidence to the contrary." (Id. at 5 n.2.)

Second, even if the R&R had misconstrued the evidence relating to the RIF, it makes no difference in the analysis (or outcome) at issue. The details of the RIF—or, in Plaintiff's argument, its non-existence—relate to Plaintiff's underlying civil rights claims and only need be explored if those claims are permitted to go forward, the release notwithstanding. Defendant's motion for summary judgment addressed only whether Plaintiff's claims must fail because she

executed a valid release barring all claims that are the subject of her complaint. The existence or details of the RIF have no bearing on whether the release was valid, and indeed, Plaintiff's one-paragraph objection to the R&R as it pertains to the RIF presents no substantive argument for the objection. (Pl. Obj. at 2.) Plaintiff's assertion that the R&R's "acceptance of the alleged RIF taints the entire Recommendation & Report" is unsupported by case authority, argument, and the analysis of the R&R. Accordingly, this objection to the R&R is overruled.

### C. Remainder of Recommendations

Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour Corp., 2012 WL 728227, at *2. The court therefore reviews for clear error the portions of Judge Scanlon's R&R that were not objected to, including the use and application of the Bormann test and analysis of state law claims. The court has reviewed Judge Scanlon's well-reasoned R&R for clear error and finds none. Accordingly, the court also adopts those portions of the R&R.

## IV. CONCLUSION

For the reasons set forth above, Judge Scanlon's R&R is ADOPTED in full. Defendant's motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2012

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge